UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Crystal Guzman

    v.                                Case No. 15-cv-230-PB
                                          Opinion No. 2016 DNH 075
Carolyn W. Colvin,
Acting Commissioner,
U.S. Social Security
Administration


**MEMORANDUM AND ORDER**

Crystal Guzman challenges the Social Security Administration's denial of her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, I grant the Commissioner's motion to affirm.


I.    **BACKGROUND**

In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 12). See LR 9.1. Because that joint statement is part of the court's record, I need not recount it here. I discuss facts relevant to the disposition of this matter as necessary below.

## II. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), I have the authority to review the pleadings submitted by the parties and the administrative record, and to enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. That review is limited, however, "to determining whether the [Administrative Law Judge] used the proper legal standards and found facts [based] upon the proper quantum of evidence." <u>Ward v. Comm'r of Soc. Sec.</u>, 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Administrative Law Judge's (ALJ's) findings of fact, so long as those findings are supported by substantial evidence. <u>Id.</u> Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." <u>Id.</u> at 770. Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining

2

issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III. ANALYSIS

Crystal Guzman is a Dover woman who was 48 years old as of December 2013.  She has past work experience as a cook, fish market clerk, receptionist, and school custodian.  Doc. No. 12 at 1-2.  She filed for DIB and SSI benefits in September 2012, claiming disability as of April 3, 2012.  Id. at 1.  The Social Security Administration denied Guzman's application, and in November 2013 a hearing was held before ALJ Paul F. Kelly.  Id. Following that hearing, the ALJ issued a written decision denying Guzman's application.  Tr. at 22-33 (ALJ's written decision).

In his decision, the ALJ found at step one that Guzman had not engaged in substantial gainful activity since April 3, 2012, her alleged onset date.  Tr. at 24.  At step two, the ALJ found that Guzman suffered from the "severe impairments" of fibromyalgia, depression, and panic disorder. Tr. at 24-25.  At step three, however, the ALJ determined that Guzman's impairments did not meet or medically equal any of the impairments listed in the relevant regulations.  Tr. at 25-26.

The ALJ then decided that Guzman retained the Residual Functional Capacity ("RFC") to perform sedentary work with certain restrictions, such as only occasionally climbing ramps or stairs, avoiding concentrated exposure to extreme heat and cold, and limiting her work to "simple, routine tasks in a low stress job." Tr. at 26. Based on this RFC, the ALJ then found at step four that Guzman could not perform her past work. Tr. at 31. Lastly, at step five, the ALJ consulted a vocational expert and determined that Guzman could perform work in the national economy. Tr. at 31-32. The ALJ therefore concluded that Guzman was not disabled. Tr. at 32.

Guzman requested review of the ALJ's decision, but in May 2015, the Appeals Council denied her request. Tr. at 1. As a result, the ALJ's decision constitutes the Commission's final decision, and this case is now ripe for review.
Guzman filed this appeal in June 2015, asserting two challenges to the ALJ's decision. First, she claims that the ALJ erred by using his lay knowledge to create Guzman's RFC, rather than relying on the expert medical opinions. Specifically, she argues that the ALJ considered two divergent medical opinions, and rather than rely on one or the other, impermissibly crafted a "middle path" between the two. Second, Guzman asserts that the ALJ failed to give proper reasons for assigning little weight to the opinion of Dr. Dmitri Dmytruk, her treating

4

physician.  For the reasons that follow, these arguments are unpersuasive.

**A.     Challenges to the ALJ's RFC Finding**

Guzman first argues that the ALJ incorrectly fashioned a "middle path" between two divergent medical opinions when he determined her RFC.  In general, the ALJ is a "lay person" and is "simply not qualified to interpret raw medical data in functional terms."  Nguyen, 172 F.3d at 35.  An ALJ must therefore rely "to some degree on RFC evaluations from a physician or another expert."  Delafontaine v. Astrue, 2011 DNH 005, 25-26.  This does not mean, however, "that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case."  Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).  Rather, an ALJ "may piece together the relevant medical facts from the findings and opinions of multiple physicians," see id., and render "common-sense judgments about functional capacity based on medical findings."  Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).  So long as "the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment," the ALJ's conclusion is permissible.  Id.

Here, the ALJ considered the opinions of several medical professionals and identified an RFC that encompassed Guzman's

physical and mental limitations. As to her physical RFC, the ALJ concluded that Guzman had the capacity to perform "sedentary work" with certain restrictions, including only occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; never climbing ladders, ropes or scaffolds; and avoiding concentrated exposure to extreme cold, heat, wetness, humidity, unprotected heights and hazardous machinery. Tr. at 26. For Guzman's mental RFC, the ALJ determined that Guzman would be limited to "simple, routine tasks in a low stress job, meaning only occasional decision-making required and occasional changes in the work setting," and "only occasional interaction with the public and co-workers." Tr. at 26. Guzman challenges both the physical and mental aspects of the RFC, and I consider each in turn.

Guzman criticizes the RFC's physical limitations by arguing that they are unsupported by the medical evidence of record. Doc. No. 8-1 at 6. She fails, however, to identify which divergent medical opinions the ALJ ignored and how exactly the RFC took a "middle path" between them.[1] Moreover, the record

---

[1] The root of Guzman's difficulty may stem from a mistake she makes about the way in which the ALJ assigned weight to opinion evidence. In her brief, Guzman asserts that "[t]he ALJ stated he issued 'little weight' to all opinions of physical limitations in the [medical evidence of record]," and therefore "[w]ithout the support of medical opinion, the ALJ only had his own lay knowledge to craft functional limitations from a raw medical record." Doc. No. 8-1 at 6 (emphasis added). This is

6

shows that the ALJ relied largely on the opinion of consulting physician Peter Loeser and supplemented Loeser's opinion with treatment notes and other evidence to determine Guzman's RFC. As explained below, because he was entitled to "piece together the relevant medical facts" from multiple sources, the ALJ's finding was permissible.  See Evangelista, 826 F.2d at 144.

The ALJ crafted Guzman's RFC by drawing principally from the opinion of Dr. Loeser, which the ALJ assigned "significant weight."  Dr. Loeser examined Guzman and concluded that although Guzman "seemed honest and genuine in the description of the related symptoms," including "significant aches and pain, there were not significant area [sic] of point tenderness during this visit and there is not any documentation to determine the extent of the workup done to solidify the diagnosis of fibromyalgia." Tr. at 521.  Dr. Loeser also noted that Guzman "is able to sit down and stand up without difficulty, get on and off the exam table without difficulty, don and doff shoes without difficulty, squat and rise from a squat without difficulty, and step up and down without difficulty."  Tr. at 521.  Based on these findings,

---

incorrect: the ALJ assigned "little weight" to the opinions of two doctors opining on physical limitations – Drs. Jaffe and Dmytruk – but assigned "significant weight" to the opinion of consulting physician Peter Loeser.  See Tr. at 27-30.  The ALJ then relied on Dr. Loeser's opinion to craft Guzman's physical RFC.

Dr. Loeser noted that he "would expect a mild effect on [Guzman's] functional capacity." Tr. at 521.

In addition to Dr. Loeser's opinion, the ALJ also considered a number of other factors to create the physical RFC, including Guzman's history of pain and "tender trigger points;" signs that her symptoms had been "improving;" and her indication that she "did not work due to pain while standing." Tr. at 27. He also noted that her "pain levels were reduced because her activity level was low." Tr. at 27. Extrapolating from these observations, the ALJ concluded that a sedentary exertional level would not result in excessive activity – which would presumably increase Guzman's pain beyond a tolerable level – and crafted an RFC that reflected that she could perform sedentary work with certain limitations. See Tr. at 26-27.

The ALJ did not "overstep the bounds of a lay person's competence" here. Gordils, 921 F.2d at 329. The medical evidence the ALJ relied upon was not "raw medical data," but rather simple statements about actions Guzman could perform. For example, Dr. Loeser noted that Guzman was "able to sit down and stand up without difficulty, get on and off the exam table without difficulty, don and doff shoes without difficulty, squat and rise from a squat without difficulty, and step up and down without difficulty." Tr. at 521. This is not inscrutable medical terminology that required an expert to interpret.

Rather, Dr. Loeser's comments were medically-informed observations about what basic activities Guzman could perform; the treatment notes and patient statements that the ALJ consulted were similarly straightforward.  See Tr. at 27.  As a neutral adjudicator, the ALJ was entitled to "piece together the relevant medical facts" such as these and render "common-sense judgments about functional capacity" based on those facts.  Gordils, 921 F.2d at 329; Evangelista, 826 F.2d at 144.  This represents such a common-sense judgment, and was therefore permissible.  Cf. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17-18 (1st Cir. 1996) ("If [the medical] evidence suggests a relatively mild physical impairment posing, to the layperson's eye, no significant exertional restrictions, then we must uphold the ALJ's finding . . . .").

The ALJ's mental RFC determination was also permissible.  The ALJ concluded that Guzman "would be limited to simple, routine tasks in a low stress job, meaning only occasional decision-making required and occasional changes in the work setting . . . [and] only occasional interaction with the public and co-workers."  Tr. at 26.  Guzman attacks this finding by making three arguments.  First, she argues that there was an "absence of a medical opinion for mental health limitations."  Doc. No. 8-1 at 5.  Second, she states that "the only acceptable medical source" for mental functional limitations was Dr.

9

Patricia Salt, whose opinion the ALJ assigned little weight. Id. And third, she criticizes the opinion of Dr. Robert Prescott, which the ALJ assigned "significant weight," for "failing to put [Guzman's] conditions in plain functional terms." Id. at 6.

None of these arguments are persuasive. First, to the extent Guzman argues that there was an "absence of a medical opinion for mental health limitations," that argument is unsupported by the record. In fact, the ALJ considered four medical opinions of mental health professionals: Dr. Prescott, Dr. Thomas Lynch, therapist Kathryn Rodger, and Dr. Salt. Tr. at 28-31. The ALJ assigned little weight to the opinions of Lynch, Rodger, and Salt, for various reasons explained in his opinion, and significant weight to the opinion of Dr. Prescott. Tr. at 28-31. To the extent Guzman challenges the weight that the ALJ assigned to these opinions, she fails to articulate a reason why the ALJ erred in doing so.

Guzman's assertion that Dr. Salt was "the only acceptable source" for mental "functional limitations" is conclusory and unaccompanied by explanation. She does not explain why Dr. Salt's opinion was more acceptable than, say, Dr. Prescott's,

10

let alone why Dr. Salt was "the only acceptable source."[2] As such, I find this argument unpersuasive.

Guzman last argues that Dr. Prescott's opinion failed to put her condition in "plain functional terms." To the contrary, however, Dr. Prescott's opinion uses simple terminology to describe Guzman's functional capacity. For example, Dr. Prescott indicated that Guzman "is able to take her medications regularly;" "appears generally able to maintain adequate hygiene and grooming;" "appears able to go shopping;" "appears generally able to interact and communicate appropriately and politely;" and "appears able to adequately manage low to moderate though not moderate to high levels of stress and change," among other things. Tr. at 527. These are plain descriptions of Guzman's capacity to function. The ALJ was allowed to rely on simple statements such as these to render a "common-sense judgment" about Guzman's mental health capacity. As such, Guzman's objections are unavailing and the ALJ's RFC stands.

## B.   Dr. Dmytruk's Opinion

Guzman next claims that the ALJ failed to give "good reasons" for assigning little weight to the opinion of Dr.

---

[2] 20 C.F.R. § 404.1513(a) explains what constitutes an "acceptable medical source" and includes "licensed or certified psychologists" like Dr. Prescott. See Tr. at 528 (noting that Dr. Prescott is a "New Hampshire Licensed Psychologist").

Dmytruk, her treating physician.  See 20 C.F.R. § 404.1527(c)(2) (requiring the ALJ to give "good reasons" to support the weight they give to a treating source).

The "treating physician rule" requires the ALJ to give "controlling weight" to the opinion of a claimant's treating physician, provided it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  Id.  If an ALJ declines to give a treating source's opinion controlling weight, she must give "good reasons" for doing so.  Id.  To meet this standard, the ALJ's reasons must be "supported by the evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Here, the ALJ gave three reasons for assigning little weight to Dr. Dmytruk's opinion.  First, the ALJ noted that Dr. Dmytruk stated that Guzman's condition would substantially affect her ability to sit, stand, and engage in postural activities and cause her to miss more than four days of work per month, but also indicated that her symptoms were under good control with medication, revealing his opinion to be internally inconsistent.  Tr. at 29-30.  Second, the ALJ noted that Dr.

12

Dmytruk said that it was "difficult to assess the claimant's work capacity given the chronic nature of her condition," which, according to the ALJ, presumably rendered his assessment of her work capacity less reliable.  Tr. at 30.  And third, the ALJ claimed that Dr. Dmytruk's opinion was "inconsistent with the record as a whole and poorly support [sic] by the evidence given the general lack of objective findings."  Tr. at 30.  These reasons were "sufficiently specific" and adequately supported by the evidence of record, and I therefore uphold the ALJ's finding.

    First, the ALJ noted that Dr. Dmytruk's conclusion that Guzman had "disabling functional limitations" was "inconsistent" with his indication that her "symptoms were under good control with medication."  Tr. at 30.  This statement finds support in the record.  As the Commissioner points out, in his "Physical Impairment Medical Source Statement," Dr. Dmytruk notes that Guzman experienced "chronic, constant, diffuse, moderate[] to severe" pain.  Tr. 585.  In that same document, however, Dr. Dmytruk indicates that Guzman experienced "good symptom control" with "Savella 50mg."  Tr. at 585.  Moreover, in the treatment documents that underpin the Medical Source Statement, Dr. Dmytruk made similar inconsistent statements.  For example, in a January 2013 treatment note, Dr. Dmytruk noted that Guzman's "[s]ymptoms include widespread pain," but are "relieved by rest

and non-opioid analgesics [like Savella]." Tr. at 581. In that same document, he notes that Guzman "reports improvement with Savella," "responseded [sic] nicely to Savella," and that a "[r]ecent intervention included adding Savella with significant benefit." Tr. at 581. Elsewhere, in a March 2013 treatment note, Dr. Dmytruk wrote that Guzman "reports doing really well on Savella," increasing "her level of physical activity." Tr. at 577. These statements reveal an inconsistency in Dr. Dmytruk's opinion which lends credence to the ALJ's assignment of little weight. See 20 C.F.R. § 404.1527(c)(3); see also Ford v. Barnhart, 2005 DNH 105, 18 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

The ALJ next noted that Dr. Dmytruk wrote that "it was difficult to assess the claimant's work capacity given the chronic nature of her condition," rendering his opinion less reliable. Tr. at 30. This too appears to be a supportable rationale for assigning Dr. Dmytruk less weight, because Dr. Dmytruk himself acknowledges that he had a hard time analyzing Guzman's functionality. The difficulty of assessing a chronic condition might be allayed by a doctor treating a claimant over a long period of time, but that was not the case here: Dr. Dmytruk only treated Guzman for nine and a half months, by his

14

own admission.  See 20 C.F.R. § 404.1527(c)(2) (noting that the length of the treatment relationship is a factor in deciding the weight to give a medical opinion); Tr. at 585.  As such, the ALJ reasonably concluded that Dr. Dmytruk's opinion was less reliable.

Finally, the ALJ criticizes Dmytruk's opinion for being "inconsistent with the record as a whole and poorly support[ed] by the evidence given the general lack of objective findings." Tr. at 30.  Guzman attacks this statement by citing Johnson v. Astrue, which holds that "trigger points are the only 'objective' signs of fibromyalgia," and therefore the ALJ may not "require[e] objective evidence beyond the clinical findings necessary for a diagnosis of fibromyalgia."  597 F.3d 409, 412 (1st Cir. 2009) (emphasis in original).  While this may be true – trigger points may serve as objective evidence of fibromyalgia – Dmytruk's opinion about trigger points directly conflicted with Dr. Loeser's, which noted that "there were not significant area [sic] of point tenderness" and "no objective physical findings."  Tr. at 521.  Faced with an inconsistency between two opinions, the ALJ must resolve the conflict by weighing a host of factors, including the supportability and consistency of the opinion and "other factors."  See 20 C.F.R. § 404.1527(c). Here, the ALJ examined both opinions and found Dr. Loeser's to be more internally consistent, more supported by the weight of

15

the medical evidence, and generally more reliable.  See Tr. at 27-28.  This conclusion was not erroneous.  Accordingly, the ALJ's decision may stand.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's motion to affirm (Doc. No. 11) is granted, and Guzman's motion to reverse (Doc. No. 8) is denied.  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

April 1, 2016

cc:   Laurie Smith Young, Esq.
      T. David Plourde, Esq.